UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA KADDO,

    Plaintiff,

v.                                    Case No. 15-10647

COMMISSIONER OF SOCIAL        HON. TERRENCE G. BERG
SECURITY,                             HON. ANTHONY P. PATTI

    Defendant.

                                          /

## ORDER ADOPTING REPORT AND RECOMMENDATION

This case is an appeal of the denial of Plaintiff's application for social security disability insurance benefits. This matter is before the Court on Magistrate Judge Anthony P. Patti's Report and Recommendation dated December 29, 2016 (Dkt. 21), recommending that Plaintiff's motion for summary judgment be granted, that Defendant's motion for summary judgment be denied, and that this matter be remanded for further proceedings.

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the Report and Recommendation. 28 U.S.C. § 636(b)(1). Defendant filed timely objections (Dkt. 22) to the Report and Recommendation; Plaintiff filed a response to Defendant's objections (Dkt. 23). A district court must conduct a de novo review of the parts of a Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The Court has reviewed Magistrate Judge Patti's Report and Recommendation, and Defendant's objections thereto. For the reasons set forth below, Defendant's objections are **OVERRULED**, and the Report and Recommendation is **ACCEPTED** and **ADOPTED** as the opinion of the Court. Consequently, this matter is **REMANDED** pursuant to sentence four of to 42 U.S.C. § 405(g) for further proceedings, consistent with the discussion below.

## ANALYSIS

### A. The Social Security Act

The Social Security Act (the Act) "entitles benefits to certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant qualifies as disabled "if she cannot, in light of her age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs*, 459 F.3d at 642 (quoting 42 U.S.C. § 423(d)(2)(A)).

Under the authority of the Act, the Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id*. § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id*. § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id*. § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id*. § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id*. § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id*.; § 404.1560(c)(1).

*Combs*, 459 F.3d at 642–43.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

3

precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step, the burden transfers to the Commissioner. *See Combs*, 459 F.3d at 643. At that point, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

Judicial review of the Commissioner's final decision is authorized pursuant to 42 U.S.C. § 405(g). Where the Appeals Council denies review, the ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Judicial review, however, is circumscribed in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quotation marks omitted) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). This substantial evidence standard is less exacting than the preponderance of evidence standard. *See Bass*, 499 F.3d at 509 (citing *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996)). For example, if the ALJ's decision is supported by substantial evidence, "then reversal would not be

warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509.

The parties do not meaningfully object to Magistrate Judge Patti's thorough recitation of the medical evidence in the record, thus the Court adopts the evidence as summarized in the Report and Recommendation. Rather, Defendant raises two objections to the Report and Recommendation, primarily concerning the ALJ's conclusions and analysis of the medical evidence. Defendant's two objections are discussed below.

### B. The ALJ Erred by Failing to Comply with the Appeals Council's First Remand Order

The first question is whether the ALJ complied with a remand order from the Appeals Council. A brief discussion of procedural history will bring this issue into focus. Plaintiff filed her application for disability insurance benefits on March 16, 2009, alleging that she had been disabled since December 26, 2006 (Tr. at 274-280). Plaintiff later amended her disability onset date to October 7, 2005 (Tr. at 93). Plaintiff's application was denied (Tr. at 165-168) and she sought a de novo hearing before an Administrative Law Judge ("ALJ"). (Tr. at 169-170). ALJ Jeanne VanderHeide held a hearing on January 5, 2011 (Tr. at 86-138). On March 22, 2011, the ALJ issued an opinion which found Plaintiff not disabled (Tr. at 141-154). Plaintiff appealed this denial and, in August 2012, the Appeals Council vacated and remanded the ALJ's decision (Tr. at 158-161). Specifically, among other things, the Appeals Council directed the ALJ to hold a second hearing, and:

5

- Obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's mental impairments;

- Further evaluate Plaintiff's mental impairments;

- Further evaluate Plaintiff's residual functional capacity (RFC) by evaluating treating and non-treating source opinions and nonexamining source opinions and to explain the weight given to such evidence (Tr. at 160-161).

On remand, the case was assigned to the same ALJ, who held another hearing on March 27, 2013 (Tr. at 38-85). On May 11, 2013, the ALJ issued a decision which again found Plaintiff not disabled (Tr. at 16-33). Plaintiff appealed again, but on December 24, 2014, the Appeals Council summarily denied Plaintiff's request for further review (Tr. at 1-3). The ALJ's second decision thus became the Commissioner's final decision. Plaintiff then timely commenced this case.

Defendant contends that this Court lacks jurisdiction to evaluate whether the ALJ complied with the Appeals Council's remand order, because a second review by the Appeals Council endorsed the ALJ's decision following the remand. There is no consensus among federal courts regarding whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal, in the absence of some other error. *See Schults v. Colvin*, 2014 WL 798399, *3 (E.D. Ky. Feb. 27, 2014). "Differing opinions exist not only between circuits, but also among courts within the Sixth Circuit which has not considered this particular issue." *Id*. For example, district courts within this Circuit have held they lacked jurisdiction to review what they viewed as an internal agency matter that arose prior to issuance of the Commissioner's final decision. *See, e.g., Sharay v.*

6

*Comm'r of Soc. Sec.*, 2016 WL 8114220, *1 (E.D. Mich. Aug. 28, 2016), report and recommendation adopted, 2016 WL 5539791 (E.D. Mich. Sept. 30, 2016); *Cooper v. Colvin*, 2014 WL 2167651, *2 (W.D.Ky. May 23, 2014); *Brown v. Comm'r of Soc. Sec.*, 2009 WL 465708, *5 (W.D. Mich. Feb. 24, 2009). Other district courts have held this is a procedural error that denied the plaintiff fair process and, therefore, reversed the final decision of the Commissioner and, pursuant to sentence four of 42 U.S.C. § 405(g), remanded the case back to the Commissioner for further proceedings. *See, e.g., Godbey v. Colvin*, 2014 WL 4437647, at *5 (W.D. Ky. Sept. 9, 2014); *Salvati v. Astrue*, 2010 WL 546490, *5–8 (E.D. Tenn. Feb. 10, 2010). At least three district courts within the Sixth Circuit have for the purposes of the analysis, assumed, without deciding, that such an error may serve as an independent ground for reversal, and the court thus has jurisdiction to consider the issue. *See Kearney v. Colvin*, 2014 WL 1091968, *7 (S.D. Ohio March 18, 2014); *Schults v. Colvin*, 2014 WL 798399, *3–4 (E.D. Ky Feb. 27, 2014); *Long v. Comm'r of Soc. Sec.*, 2012 WL 4009597, *2–3 (S.D. Ohio Sept. 12, 2012).

The Commissioner's own regulations require an ALJ to "take any action that is ordered by the Appeals Council . . . ." 20 C.F.R. §404.977(b). In *Godbey,* a district court held that, "[t]his means administrative law judge compliance with a remand order is a mandatory procedural requirement under the Commissioner's own regulations. Thus, when an administrative law judge fails to comply with an emphatic directive . . . within a remand order, the administrative law judge's decision does not comport with applicable procedural law." *Godbey*, 2014 WL

7

4437647, at *7 (citations omitted). Magistrate Judge Patti recommended that this Court conclude that an ALJ's failure to comply with an order of the Appeals Council violates a claimant's right to receive fair process as embodied in the Commissioner's own administrative regulations. The Court agrees with this recommendation, and holds that the failure by an ALJ to follow a remand order from the Appeals Council, even if that failure is allowed to stand by a later Appeals Council ruling, can constitute a reversible error in federal court. This holds true regardless of whether substantial evidence otherwise supports the Commissioner's final decision. *See Salvati*, 2010 WL 546490150, at *6-7.

Turning to the particulars of the ALJ's second opinion, Magistrate Judge Patti correctly noted that the Appeals Council specifically required the ALJ to evaluate treating, non-treating and examining source opinions, and to explain what weight was given to each source's opinion. However, the ALJ's second opinion did not mention Dr. Mohammed (a treating psychiatrist) or Ms. Azmeh (a treating social worker) and there is no explanation of what weight each of their opinions was given. Moreover, the ALJ expressly found the IQ testing by Dr. Schimmel to be invalid but did not explicitly state what weight, if any, she gave to his overall opinions (Tr. at 28). As such, this matter must be remanded, as the ALJ in this case did not follow the directives of the Appeals Council. On remand, the ALJ is directed to discuss the opinions of all sources, with an explanation of the weight given to each source's opinion, as originally ordered by the Appeals Council (*see* Tr. at 158-161).

## C. The ALJ's Decision Is Not Supported by Substantial Evidence

Magistrate Judge Patti's Report and Recommendation found an additional, independent, reason warranting remand. Namely, that the ALJ failed to properly evaluate the treating and non-treating examining source opinions in the record. The Court also agrees with this recommendation.

The primary error involves the ALJ's conclusion concerning Plaintiff's mental condition known as somatoform disorder. Following remand, Martin Macklin, M.D. testified as a medical expert. Dr. Macklin testified that he had not examined or treated Plaintiff, but that he had reviewed the record (Tr. at 70, 74-75). When asked which impairments of Plaintiff's were established by medically acceptable clinical and laboratory findings, Dr. Macklin mentioned depression, anxiety (which he testified was sometimes diagnosed in the record as panic disorder), and "either organic mental disorder or mental retardation. . . ." (Tr. at 75). Dr. Macklin also stated "there's also some elements of somatoform disorder, and counsel mentioned histrionic. We're not supposed to use that term anymore, so—it's a sexist term, so we don't use histrionic anymore . . . . [W]e use somatoform disorder now, or something similar to that" (Tr. at 76). Dr. Macklin described the combination of those impairments, along with ADHD, as being severe (Tr. at 76-77).

In fact, Dr. Macklin believed the combination of Plaintiff's impairments equaled Listing 12.07, which pertains to somatoform disorder. Dr. Macklin also testified that Plaintiff has marked difficulties in social functioning and in maintaining concentration, persistence and pace, despite her having successfully

9

taken some college courses (Tr. at 82). Dr. Macklin's testimony concluded with the following exchange:

> Q. [ALJ] Yeah, and I guess my question is, I mean, honestly, I'm surprised she did—with all that was going on got as far as she did, but, you know, if the—but that's different from saying that an individual would be—not be able to work at a job where it was simple, routine tasks, low-stress environment, occasional decision making, only occasional changes in the work setting, no fast-paced production work, occasional interaction with [the] public and others.
>
> A. [Dr. Macklin] It is very different, because she just—she only had to be there [presumably school] for an hour at a time, and didn't show up part of the time. You can't work like that. You can't be employed with those conditions (Tr. at 84).

The ALJ rejected Dr. Macklin's somatoform disorder diagnosis, at least in part, because "during the course of approximately 5 years of mental health treatment, no other medical professional have [sic] prepared any treatment notes that support Dr. Macklin's diagnosis" (Tr. at 24). This conclusion is not supported by substantial evidence.

The medical record is replete with references to Plaintiff's displaying symptoms of somatoform disorder, or the outmoded terms for that condition: "histrionic" or "hysterical." By way of example, Dr. Dibai's statement that Plaintiff "appeared preoccupied with somatic complaints and particularly back pain . . . ." (Tr. at 666); Dr. Schimmel opined that Plaintiff's test results mean that "[d]epressive and hysterical features are likely" (Tr. at 544); Dr. Mohammed's notation that Plaintiff "reports the following somatic complaints: Difficulty with sleep, difficulty with appetite, abdominal pain, tachycardia, shortness of breath, sweating, headache, dizziness, crying spells, decreased energy, loss of interest" (Tr.

at 535); Dr. Boneff's diagnosis that Plaintiff suffers from "[m]ixed personality disorder with histrionic, borderline, narcissistic, and dependent features" and his statement that Plaintiff "appeared to exaggerate her difficulties throughout the evaluation, presenting in an immature fashion and acting in a histrionic manner" (Tr. at 670, 673). In sum, the ALJ's statement about the record containing *nothing* to support Dr. Macklin's somatoform disorder diagnosis is not supported by substantial evidence, and a remand is required on this issue alone.

Relatedly, the ALJ's nearly wholesale rejection of Plaintiff's IQ testing results and diagnosed mental impairments based upon Plaintiff's ability, at times, to successfully take classes at Henry Ford Community College[1], is also not supported by substantial evidence. Having the ability to attend college classes for an hour or so at a time is not the same as having the ability to engage in a typical 40-hour workweek (i.e., engage in substantial gainful activity). The distinction between attending school and working full-time was highlighted by Dr. Macklin at the second hearing (Tr. at 84, block quoted above), but the ALJ's decision fails to address this distinction in any meaningful way. On remand, the ALJ should discuss how Plaintiff's ability to attend college classes does or does not, correlate to her having the ability to sustain full-time employment.

## CONCLUSION

For the reasons set forth above,

---

[1] The ALJ concluded that "[t]he remaining evidence demonstrates that, despite the limitations imposed by her mental impairments, from 2003 to 2012, the claimant was able to retain the mental capacity to commute to a college campus, sit in classes with other students, and maintain adequate attention and concentration . . . ." (Tr. at 31).

11

It is hereby **ORDERED** that Magistrate Judge Patti's Report and Recommendation of December 29, 2016 (Dkt. 21) is **ACCEPTED** and **ADOPTED**, and Defendant's objections (Dkt. 22) thereto are **OVERRULED**.

It is **FURTHER ORDERED** that Plaintiff's motion for summary judgment (Dkt. 17) is **GRANTED** and Defendant's motion for summary judgment (Dkt. 19) is **DENIED**.

Accordingly, it is **ORDERED** that this matter be **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: February 28, 2017

### Certificate of Service

I hereby certify that this Order was electronically submitted on February 28, 2017, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager